**OKIN, HOLLANDER & DeLUCA, L.L.P.**
One Parker Plaza, 12th Floor
400 Kelby Street
Fort Lee, NJ  07024
Tel:     (201) 947-7500
Fax:     (201) 947-2663
Paul S. Hollander (PH-2681)
James J. DeLuca (JD-4434)
Gregory S. Kinoian (GK-7386)

Proposed Attorneys for Martin Cadillac, LLC
Debtor and Debtor-in-Possession

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re | Chapter 11 |
| **MARTIN CADILLAC, L.L.C.**, | Case No.    10-29520 (___) |
| Debtor and Debtor-in-Possession. | |

### DECLARATION OF TIMOTHY F. MARTIN IN SUPPORT OF DEBTOR'S EMERGENT MOTION FOR EMERGENT ORDER AUTHORIZING, PENDING HEARING ON THE DEBTOR'S FIRST DAY MOTIONS, THE IMMEDIATE USE OF CASH COLLATERAL AND GRANTING OTHER LIMITED RELIEF RELATING THERETO

TIMOTHY F. MARTIN, under penalty of perjury, hereby states and declares the following:

1.     I am the managing and sole member of Martin Cadillac, L.L.C. (the "Debtor"), the above-captioned debtor and debtor-in-possession.  The Debtor is a New Jersey limited liability company.  I make this Declaration in support of the Debtor's Emergent Motion for an Emergent Order Authorizing, Pending the Hearing on the Debtor's First Day Motions (as such term is defined below), the Immediate Interim Use of Cash Collateral and Granting Other Limited Relief Relating Thereto (the "Emergent Motion").  I have served as the managing member of the Debtor since its formation on or about June 3, 2003.  As such, I am familiar with

the Debtor's day-to-day operations, business affairs and records. I am duly authorized to make this Declaration on the Debtor's behalf. Except where indicated otherwise, I base this Declaration on my personal knowledge, my review of the Debtor's books and records, my consultation with Debtor's proposed counsel and its financial consultant, and my review of information prepared for and provided to me in connection with the Emergent Motion and the First Day Motions.

## **INTRODUCTION**

2.    The Debtor has filed a petition for relief under Chapter 11 of Title 11 of the United States Code (11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code")) on or about the date of this Declaration (the "Petition Date"). The Debtor will be operating its business as a debtor-in-possession in accordance with Sections 1107(a) and 1108 of the Bankruptcy Code.

3.    For the reasons set forth herein, the Debtor is requesting that the Court consider the Emergent Motion at a hearing to be scheduled at the Court's earliest convenience and at a date and time the Court deems reasonable under the circumstances. The Emergent Motion was filed for immediate interim relief to bridge the period between the Petition Date and the date that the First Day Motions could be heard, particularly with respect to the Debtor's use of cash collateral. An Application has been filed with respect to the Emergent Motion. As set forth in the Emergent Motion, granting the Debtor the relief requested in the Emergent Motion is crucial to the Debtor's ability to operate its business during this Chapter 11 proceeding without interruption.

4.    Owing to certain exigent circumstances, described in more detail below, the Debtor has commenced this Chapter 11 case in an expedited manner. As a result, the Debtor has not had sufficient time to have ready the typical complement of motions that usually accompany

2

the filing of a petition for relief under Chapter 11.  However, the Debtor anticipates filing, within the next several days after the Petition Date, motions seeking the following relief (collectively, the "First Day Motions"):  (a) authority to use cash collateral, and certain other relief related thereto; (b) authority to maintain certain active bank accounts and to continue to use existing business forms, and certain other relief related thereto; (c) authority to honor pre-petition payroll, salaries, commissions, employee benefits (at the Debtor's discretion) and other related and similar obligations and programs, and certain other relief related thereto; (d) approval of adequacy of assurance of payment to utility service providers pursuant to Bankruptcy Code Sectoin 366, and certain other relief related thereto; (e) authority to pay pre-petition claims of certain critical vendors and service providers, and certain other relief related thereto; and (f) possibly certain other relief not specified here.  It is anticipated that the First Day Motions will be accompanied by an application requesting expedited consideration of the First Day Motions.

     5.     The purposes for the First Day Motions include, among other things, the following:  (a) insuring the Debtor's ability to continue operating in the ordinary course and to ease the transition into Chapter 11; (b) minimizing disruption of the Debtor's ability to continue selling and servicing new and used vehicles to and for its customers and, thereby, to preserve those customers' confidence in the Debtor; (c) maximize the value of the Debtor's assets, including, without limitation, its Dealership (as hereinafter defined), its Lease (as hereinafter defined) and its accounts receivables; (d) maintaining and bolstering morale among the Debtor's 45 employees so as to reduce employee attrition during the Debtor's Chapter 11 proceeding, which otherwise would have a detrimental impact on the Debtor's business and on customer

3

service; and (e) maintaining vital vendor and financing relationships. Each of the First Day Motions will be important to the Debtor's reorganization efforts.

## BACKGROUND

6. The Debtor is the owner and operator of a Cadillac car dealership (the "Dealership") located at 374 Route 9W (Sylvan Avenue), Englewood Cliffs, New Jersey 07632 (the "Dealership Premises") pursuant to a Dealer Sales and Service Agreement originally with General Motors Corporation ("Old GM") and which is now held by General Motors, LLC ("New GM"). The Dealership leases the Dealership Premises from Nacht Cadillac, Inc. ("Nacht") pursuant to a Master Lease (the "Lease") dated June 6, 2003 (Nacht being described in such Master Lease as an affiliate of Argonaut Holdings, Inc., itself an affiliate of Old GM).

7. The Debtor has 45 employees. The book value of the Debtor's assets, as of the Petition Date, is approximately $18,419,390.[1] The Debtor has approximately $23,374,114 in total obligations (combined secured and unsecured (portions of which are subject to disputes)). The Debtor had gross sales in 2008 of $72,583,294 and in 2009 of $60,815,586.

8. Prior to suffering certain financial reversals in 2009, the Debtor had successfully operated its Dealership since 2003 and, through 2008, had achieved recognition as one of the most successful Cadillac dealerships in the United States. Until April, 2010 an affiliate of the Debtor, Martin Cadillac of Yonkers, LLC ("Martin Yonkers") operated a separate Cadillac car dealership located at 1245 Central Park Avenue, Yonkers, New York 10704 (the "Yonkers Premises"). As a result of financial reversals and other business considerations (the substance of which will not be gone into here), in April 2010, Martin Yonkers was forced to close its doors

---

[1] This amount is based on a General Motors Dealer Operating Report as of May 31, 2010. The information on the report has not been reconciled by the Debtor against its books and records. Furthermore, the amount does not include certain executory contract rights that the Debtor has (or may have), the values of which are to be determined.

and witness the liquidation of its assets by General Motors Acceptance Corporation (also known as GMAC, Inc. and now known as Ally Financial Inc. ("GMAC")).

9. As will be briefly explained below, several creditors of Martin Yonkers held or eventually acquired the guarantee of the Debtor for obligations that arose, in the first instance, from their dealings with Martin Yonkers. In certain instances, creditors of Martin Yonkers have or may claim that the obligations due from Martin Yonkers have been guaranteed by the Debtor and are collateralized by and/or cross-defaulted against the assets of the Debtor.

10. The closure of Martin Yonkers and the resulting obligations of Martin Yonkers that are now being asserted against the Debtor, which have put further pressure on the Debtor's finances and, ultimately, its ability to continue to operate in the ordinary course. Among other things, on June 17, 2010, Mariner's Bank ("Mariner's"), originally only a creditor of Martin Yonkers, commenced an action against the Debtor and others before the Superior Court of New Jersey, Law Division, Bergen County (Docket No. L-5888-10) by way of Order to Show Cause returnable June 25, 2010 at 2:00 p.m. seeking to enforce certain of its alleged claims against the Debtor and to reposes certain assets of the Debtor's in which Mariner's claim a lien (the "Mariner's Action"). Upon the filing of the Debtor's Chapter 11 petition the Debtor's proposed counsel will be filing a Notice of Removal with respect to the Mariner's Action to effectuate the removal of that matter to this Court.

11. In an effort to preserve value for all of its creditor constituencies, the Debtor made a decision to seek protection under Chapter 11 of the Bankruptcy Code in order to pursue an orderly process of selling/assigning, as permitted by applicable law, its interest in the Dealership and the Dealership's tangible and intangible assets, including the Lease, which contains an option to purchase the Dealership Premises at what I believe, based upon an independent 2009

5

real estate appraisal, to be at an option price that is as much as $4,000,000.00 or more below the current market value for the Dealership Premises. While the Dealership is trying to implement this strategy, it needs to continue to operate in the ordinary course and have access to its cash collateral to fund its post-petition ordinary course obligations.

**Known Parties Asserting Security Interests and/or Liens Against the Debtor's Assets**

12. At the present time proposed, Chapter 11 counsel for the Debtor has, based upon their review of certain loan files and a UCC search dated June 11, 2010 (**Exhibit "A"** hereto) (the "Search") made available to them by GMAC, one of the Debtor's pre-petition lenders, identified the following parties who have or may assert an interest in the Debtor's cash collateral:

    (a)    GMAC based on a UCC filing;[2]

    (b)    Valley National Bank, as successor in interest to The Park Avenue Bank ("Park Avenue Bank") ("VNB") based on a UCC filing;[3]

    (c)    Farrell Family Ventures, LLC ("Farrell") based on a UCC filing;[4] and

    (d)    State of New Jersey, Division of Taxation ("Division of Taxation") based on a Certificate of Debt filed on April 29, 2010.[5]

---

[2] The un-reconciled books and records of the Debtor reflect that the Dealership is directly indebted to GMAC (exclusive of any amounts owing for or on account of the obligations of Martin Yonkers) in the total amount of $6,935,371.

[3] I am informed, by counsel for Martin Yonkers, that in connection with litigation pending in the New York Supreme Court, VNB is claiming that it is owed in excess of $10,000,000 by Martin Yonkers and that, according to VNB, the Debtor has guaranteed that amount. The indebtedness claimed by VNB as being due from Martin Yonkers is disputed and subject to counterclaims, which disputes and counterclaims all apply to whatever liability, if any, the Debtor may owe on its guarantee, to the extent such guarantee is enforceable.

[4] According to pleadings filed by Farrell in an action in the New York Supreme Court, Farrell claims that it is owed a balance of $2,573,403.28. The Debtor believes that it has substantial offsets well in excess of $700,000.00 to this claim arising from the purchase and sales of vehicles to an affiliate of Farrell and is therefore reserving all of its rights to challenge and/or dispute such indebtedness and the asserted security therefore, and to raise offsets, defenses and possible counterclaims thereto.

[5] The Certificate of Debt filed by the State of New Jersey against the Debtor (DJ-113819-2010) asserts an indebtedness of $408,305.90. The Debtor believes that this amount may not fully reflect all amounts due the State of New Jersey and is in the process of reviewing its records to determine the correct amount due the State of New Jersey. The State of New Jersey also filed, on April 29, 2010, a second Certificate of Debt (DJ-113820-2010) against Debra Martin d/b/a Martin Cadillac, which is believed to be a duplicate filing of the Certificate filed against the Debtor.

6

Service of the Emergent Motion is being effected on the above-listed creditors. Although proposed counsel for the Debtor does not believe that Mariner's has any UCC financing statement filed against the Debtor's assets and that it has no other properly perfected lien against any of the Debtor's assets,[6] as a matter of precaution, notice of this Emergent Motion is being served on Mariner's. Service of the Emergent Motion is also being effected on ADP Commercial Leasing, LLC and U.S. Bancorp, which are believed to have UCC filings as to specific equipment only (that is, the UCC filings do not appear to cover cash collateral).

13. At the present time, it appears, based on the Search, that GMAC has the earliest filed UCC financing statement with a collateral description that would cover cash collateral. Based upon an initial review by Debtor's proposed counsel of the Search and other relevant documents, it appears that there are or will be disputes as between the Debtor and at least certain of the aforementioned alleged secured parties and between and among such alleged secured parties as to the validity, extent and priority of their respective secured claim.

14. If Debtor is given permission to use cash collateral, it proposes to do so, on an emergency and thereafter interim and final basis, substantially in accordance with the form and substance of a budget, beginning as of July 6, 2010, a copy of which is attached hereto as **Exhibit "B"** (the "Budget"). Without access to the use of cash collateral, the Debtor will not be able to continue to operate its business and the Debtor's prospect for a sale/assignment of its interest in the Dealership and the Dealership's tangible and intangible assets, including the Lease will be irreparably harmed.

---

[6] According to pleadings filed in the Mariner's Action, Mariner's claims that it holds a $2,600,000 promissory note from the Debtor. The complaint in the Mariner's Action does not set forth a specific amount that it claims to be owed. The Debtor is reserving all of its rights to challenge and/or dispute such indebtedness and the asserted security therefore, and to raise offsets, defenses and possible counterclaims thereto.

15. At the time that the Emerging Motion is being filed, the Debtor does not have a commitment from its existing floor plan lender, GMAC, to provide post-petition floor plan financing for new Cadillac vehicles purchased after the Petition Date. At present, the Debtor has an inventory of approximately 82 new and 5 used Cadillacs under floor plan with GMAC. The Debtor intends to pursue an agreement with GMAC to secure its consent to the Debtor's continued sale of these vehicles in the ordinary course in the Chapter 11 case with GMAC's floor plan amount to be repaid out of proceeds of each sale. While GMAC has not made a formal commitment that would memorialize the Debtor's right to continue to sell these vehicles, I am reasonably optimistic that, based on discussions earlier this week, GMAC will ultimately be agreeable to such an arrangement which, if and when documented, will be presented to the Court for approval. The Debtor is separately pursuing other sources to obtain a debtor in possession floor plan loan which, if obtained, would also be subject to a separate application to be submitted to this Court.

**I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.**

Dated: June 25, 2010

_____
Timothy F. Martin
Managing Member of
Martin Cadillac, LLC