**OKIN, HOLLANDER & DeLUCA, L.L.P.**
One Parker Plaza, 12th Floor
400 Kelby Street
Fort Lee, NJ  07024
Tel:    (201) 947-7500
Fax:    (201) 947-2663
Paul S. Hollander (PH-2681)
Gregory S. Kinoian (GK-7386)

Attorneys for Martin Cadillac, L.L.C.
Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re | Chapter 11 |
| **MARTIN CADILLAC, L.L.C.,** | Case No.    10-29520 (RG) |
| Debtor and Debtor-in-Possession. | |

**VERIFIED APPLICATION IN SUPPORT OF DEBTOR'S MOTION FOR AN ORDER,
PURSUANT TO 11 U.S.C. §§ 105(a) AND 364(b) AND FED. R. BANKR. P. 4001(c)
(A) AUTHORIZING THE DEBTOR-IN-POSSESSION TO OBTAIN POST-PETITION
FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE,
(B) GRANTING LIENS, SECURITY INTERESTS AND SUPER-PRIORITY CLAIMS IN
CONNECTION THEREWITH, AND (C) GRANTING CERTAIN OTHER RELIEF
RELATING THERETO**

Martin Cadillac, L.L.C., the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its counsel, submits this Verified Application in support of the Debtor's motion for an order, substantially in the form submitted herewith, pursuant to 11 U.S.C. §§ 105(a) and 364(b) and Fed. R. Bankr. P. 4001(c), (A) authorizing the Debtor to obtain post-petition financing pursuant to Bankruptcy Code Section 364, (B) granting liens, security interests and super-priority claims in connection therewith, and (C) granting certain other relief relating thereto (the "Motion").  As and for this Verified Application, the Debtor respectfully represents the following:

**Preliminary Statement**

1.      The Debtor believes it may have claims against various parties arising from

certain matters that occurred both before and after the commencement of its Chapter 11 case.

The Debtor further believes that such claims, if pursued, may have value to its bankruptcy

estate.  The Debtor further believes that it would be in the best interests of the Debtor, its

bankruptcy estate and its creditors to investigate what claims, if any, there are or may be, and, if

claims do exist, what value such claims may have and whether, in the Debtor's business

judgment, such claims should be pursued.

2.      On October 12, 2010, an application to approve the retention of law firms of

Storch Amini & Munves PC ("SAM") and Miller, Canfield, Paddock & Stone, P.L.C. ("MC")

(collectively, "Special Litigation Counsel") as special litigation counsel was filed on behalf of

the Debtor (Docket No. 155) (the "Retention Application").  Special Litigation Counsel is being

sought to be retained to, initially, conduct the investigation into the potential claims that the

Debtor has or may have.  Special Litigation Counsel requires a $100,000 advance retainer to

conduct the investigation.  Objections to the Retention Application were filed by the United

States Trustee ("U.S. Trustee") and General Motors LLC ("GM") (respectively, Docket Nos. 164

and 165), who raised, among other things, issues concerning the source of the $100,000 retainer

to be paid to Special Litigation Counsel.

3.      At the time that the Retention Application was filed, there was an expectation that

the $100,000 retainer would be funded by the Debtor's principal, Mr. Timothy Martin, through

personal borrowing.  However, as discussed at the status conference held on October 26, 2010,

the $100,000 retainer will now be funded by Emerald Capital Management LLC, a Delaware

LLC with its principal office located in Closter, New Jersey (the "Lender"), making a debtor-in-

possession loan to the Debtor.  The Lender has agreed to provide $100,000 in initial financing

directly to the attorney escrow account of SAM (the "Special DIP Loan"). The terms of the

financing are set forth in the Debtor-in-Possession Credit Agreement attached hereto as Exhibit

A (the "Loan Agreement").

4.     Substantially contemporaneous with the filing of this Motion, Special Litigation

Counsel filed a supplement to the Retention Application (Docket No. 185)[1] (the "Retention

Application Supplement"), which included, as Exhibit B thereto, a modified retention agreement

dated October 29, 2010 (the "Modified Engagement Letter"), which revised the provision

concerning the funding of the $100,000 retainer.  As set forth in the Modified Engagement

Letter, the Debtor's engagement of Special Litigation Counsel is not only subject to the Court

approving the Retention Application, as supplemented, but also approving the Loan Agreement

on terms that are satisfactory to the Lender.

5.     In order to conduct the investigation into the potential claims that the Debtor has

or may have, the Debtor needs to borrow funds, and it is the Debtor's business judgment that

obtaining the Special DIP Loan, on the terms set forth in the Loan Agreement, for the initial

purpose of funding an investigation of potential claims is in the best interests of the Borrower, its

bankruptcy estate and its creditors.  Furthermore, should a decision be made after the initial

investigation that there are claims of the Debtor that are worth pursuing, the Lender has

expressed a willingness, at its discretion, to advance up to an additional $250,000 toward

litigation costs.

---

[1] The Exhibits to the Retention Application Supplement were filed as Docket No. 186.

**Introduction and Jurisdiction**

6.      The Debtor filed a petition for relief under Chapter 11 of Title 11 of the United

States Code (11 U.S.C. § 101, et seq. (the "Bankruptcy Code")) on June 25, 2010 (the "Petition

Date").  The Debtor is operating its business as a debtor-in-possession in accordance with

Sections 1107(a) and 1108 of the Bankruptcy Code.  No Chapter 11 Trustee has been appointed

and no Committee of Unsecured Creditors has been organized.

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and

157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (O).  Venue is

proper in this Court pursuant to 28 U.S.C. § 1409(a).

8.      Reference is made to the following:

(a)     the Declaration of Timothy F. Martin in Support of Debtor's Emergent
        Motion for Emergent Order Authorizing, Pending Hearing on the Debtor's
        First Day Motions, the Immediate Use of Cash Collateral and Granting
        Other Limited Relief Relating Thereto, filed on the Petition Date, June 25,
        2010 (Docket No. 2-2) (the "Emergent Martin Declaration");

(b)     Declaration of Timothy F. Martin in Further Support of Debtor's Motion
        for the Continued Use of Cash Collateral and Granting Other Limited
        Relief Relating Thereto, filed on August 12, 2010 (Docket No. 83) (the
        "Martin Declaration");

(c)     the Supplemental Declaration of Timothy F. Martin in Further Support of
        Debtor's Motion for the Continued Use of Cash Collateral and Granting
        Other Limited Relief Relating Thereto, filed on August 20, 2010 (Docket
        No. 86) (the "Supplemental Martin Declaration");

(d)     Declaration of Gregory S. Kinoian (A) in Response to Limited Objection
        of General Motors LLC (Docket Nos. 91, 92 and 95) to Debtor's
        Application for an Order Scheduling a Hearing on Shortened Notice and
        Request for Adjournment (Docket No. 88), and (B) in Further Support of
        Debtor's Motion for an Order Holding General Motors LLC in Contempt
        for Violation of the Automatic Stay Under 11 U.S.C. § 362(a) and
        Granting Other Relief Relating Thereto (Docket No. 87) [the "Contempt
        Motion"], filed on August 23, 2010 (Docket No. 96) (the "Kinoian
        Declaration");

4

(e)     Declaration of Gregory S. Kinoian in Support of the Debtor's Opposition
to Motion of United States Trustee for an Order Converting the Case to
Chapter 7, or, in the Alternative, Dismissing the Case Pursuant to 11
U.S.C. § 1112(b) (Docket No. 108), filed on September 8, 2010 (Docket
No. 117) (the "Second Kinoian Declaration"); and

(f)     Verified Statement of and on Behalf of the Debtor in Further Support of
(A) the Debtor's Continuing Use of Cash Collateral (Docket No. 2),
(B) the Debtor's Motion for an Order Holding General Motors LLC in
Contempt for Violation of the Automatic Stay (Docket No. 87), and
(C) the Debtor's Opposition to Motion of United States Trustee for an
Order Converting the Case to Chapter 7, or, in the Alternative, Dismissing
the Case (Docket No. 108), and in Support of the Debtor's Opposition to
(D) the Motion of ADP Inc. Dealer Services Group, et al., for Relief from
the Automatic Stay (Docket No. 97), (E) the Motion of Harleysville
Insurance Company to Compel the Debtor to Assume or Reject an
Executory Insurance Contract (Docket No. 102), and (F) the Motion of
Horizon Healthcare Services, Inc. for Relief from the Automatic Stay or,
in the Alternative, to Compel the Debtor to Assume or Reject an
Executory Insurance Contract (Docket No. 121), filed on October 1, 2010
(Docket No. 131) (the "October 1, 2010 Verified Statement").

The Emergent Martin Declaration, the Martin Declaration, the Supplemental Martin Declaration,

the Kinoian Declaration, the Second Kinoian Declaration and the October 1, 2010 Verified

Statement are incorporated herein by reference.

## Background

9.      The Debtor is the owner and operator of a Cadillac car dealership (the

"Dealership") located at 374 Route 9W (Sylvan Avenue), Englewood Cliffs, New Jersey 07632

(the "Premises").  The Debtor owns and operates the Dealership pursuant to the Dealer

Agreement (the Dealer Agreement was originally with General Motors Corporation ("Old

GM")).  The Debtor occupies the Premises pursuant to a Master Lease dated June 6, 2003 with

Nacht Cadillac Inc., as landlord (the "Lease").  Upon information and belief, Argonaut Holdings,

Inc. ("AHI") is an assignee and/or successor-in-interest of Nacht Cadillac, Inc. under the Lease

and is the current owner in fee of the Premises.  Upon information and belief, AHI is affiliated

with GM.

10.      Prior to suffering certain financial reversals in 2009, the Debtor had successfully operated its Dealership since 2003 and, through 2008, had achieved recognition as one of the most successful Cadillac dealerships in the United States.  Until April, 2010 an affiliate of the Debtor, Martin Cadillac of Yonkers, LLC ("Martin Yonkers") operated a separate Cadillac car dealership located at 1245 Central Park Avenue, Yonkers, New York 10704 (the "Yonkers Premises").  As a result of financial reversals and other business considerations, in April 2010, Martin Yonkers was forced to close its doors and witness the liquidation of its assets by General Motors Acceptance Corporation (also known as GMAC, Inc. and now known as Ally Financial Inc. ("GMAC")).

11.      As has been detailed in numerous other pleadings already of record in this Chapter 11 case, the conduct of GM and GMAC hurt the Debtor's operations by depriving the Debtor of significant revenues and, thereby, making it impossible for the Debtor to operate the dealership in a competitive manner pending an orderly sale process.   As a result, the Debtor ceased operations on or about October 20, 2010.

12.      GM and GMAC's injurious conduct occurred both prior to and after the Petition Date.  Furthermore, other parties have caused substantial harm to the Debtor, some of which is already the subject matter of pending litigation.  It is these claims for which the Debtor seeks the retention of Special Litigation Counsel.

13.      As the record of this case demonstrates, the Debtor does not have funds available to pay the $100,000 retainer to Special Litigation Counsel.  The Debtor believes that the investigation may reveal that the Debtor has claims that have real value and that would benefit the Debtor's estate and its creditors.  Without the Special DIP Loan, the Debtor will surely lose what might prove to be a valuable asset to the Debtor's estate.  Furthermore, the terms of the

Loan Agreement (which will be described more fully below) make clear that the Debtor's estate

does not bear any risk in the event there is no litigation or there is no recovery from litigation.

For these reasons, approval of this Motion and the Loan Agreement should be granted.

### The Loan Agreement

14.    The Loan Agreement is annexed hereto as Exhibit A and its terms are

incorporated herein by reference.  Some of more salient terms of the Loan Agreement are as

follows:[2]

    (a)    Pursuant to Section 1 of the Loan Agreement, the Special DIP Loan

consists of two parts:  (i) Tranche A is for the $100,000 retainer required

by Special Litigation Counsel, the funding of which is subject to Court

approval of the Loan Agreement and the Retention Application; and

Tranche B is, in the Lender's discretion, the possibility to fund an

additional $250,000 after the completion of Special Litigation Counsel's

investigation.

    (b)    Pursuant to Section 2 of the Loan Agreement, use of the Special DIP Loan

is limited to the retention of Special Litigation Counsel and the payment of

their fees and expenses as approved by the Court.

    (c)    Pursuant to Section 3 of the Loan Agreement, the Lender seeks as security

for the repayment of the Special DIP Loan the following:  (a) a first lien

on the proceeds recovered through the efforts, in part or in whole, and

direct or indirect, of Special Litigation Counsel (to the extent not

---

[2] The following summary is for informational purposes only.  The actual terms of the Loan Agreement, which are incorporated herein by reference, should be reviewed.  Any inconsistency between the summary in this Verified Application and the Loan Agreement should be read in favor of the Loan Agreement.  Nothing in this Verified Application is intended to, and should not be deemed to, amend, alter, modify or otherwise change the terms of the Loan Agreement.  The terms of the Loan Agreement are and should be deemed controlling.

encumbered by a valid and unavoidable pre-existing lien or security

interest), (b) a first secured super-priority interest in all of Borrower's

property and proceeds not subject to a pre-existing lien or security interest,

(c) a super-priority administrative expense claim, and (d) an administrative

expense claim, in that order.

(d)      Pursuant to Section 4 of the Loan Agreement, the rate of interest on the

Tranche A loan would be fifteen percent (15%) (the rate of interest on the

Tranche B advance, if made (at the Lender's discretion), would be subject

to agreement between the Debtor and the Lender, and subject to Court

approval).

(e)      Pursuant to Section 5 of the Loan Agreement, the Special DIP Loan shall

be due and payable upon the recovery, if any, of monies obtained through

the efforts of Special Litigation Counsel, with repayment of principal or

interest applied as follows: (i) first, to pay the amount of accrued interest

outstanding; (ii) second, in payment of unpaid principal.

(f)      Pursuant to Section 6 of the Loan Agreement, the Lender may terminate

any of its obligations under the Loan Agreement at any time, without

notice to the Debtor, upon (i) the conversion of the Chapter 11 case to a

case under Chapter 7 of the Bankruptcy Code, (ii) the appointment in the

Chapter 11 case of a trustee or an examiner or other responsible person

with expanded powers, (iii) the dismissal of the Chapter 11 case; or

(iv) the occurrence of an event of default (which are enumerated in

Section 6 of the Loan Agreement).

8

(g)     Section 10 of the Loan Agreement includes "Miscellaneous" provisions

including, but not limited to the following:

(i)     an indemnity (at page 5 of the Loan Agreement), which reads as

follows:

General Indemnity.  Borrower hereby agrees to indemnify and defend Lender and to hold Lender harmless from and against any Claim ever suffered or incurred by Borrower arising out of or related to this Agreement, the performance by Lender of its duties or the exercise of any of its rights or remedies hereunder, or the result of Borrower's failure to observe, perform or discharge any of such Borrower's duties hereunder. Borrower shall also indemnify and defend Lender against and save Lender harmless from all claims of any person arising out of, related to, or with respect to any transactions entered into pursuant to this Agreement.

(ii)     a release (at pages 6-7 of the Loan Agreement), which reads as

follows:

Release.  BORROWER, IN ITS OWN RIGHT AND ON BEHALF OF ITS ESTATE, REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE **"RELEASING PARTIES"**), HEREBY JOINTLY AND SEVERALLY RELEASE, ACQUIT, AND FOREVER DISCHARGE LENDER AND ITS REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE **"RELEASED PARTIES"**) FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES, WHETHER DIRECTLY, INDIRECTLY OR DERIVATIVELY, WHETHER OR NOT IN CONNECTION WITH OR RELATED TO THE SPECIAL DIP LOAN OR ANY MATTER OR DOCUMENT RELATED HERETO, AT LAW OR IN EQUITY, BY STATUTE OR COMMON LAW, IN CONTRACT, IN TORT, WHETHER THE LAW OF THE UNITD STATES OR ANY OTHER COUNTRY, UNION, ORGANIZATION OF FOREIGN COUNTRIES OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, BUT EXCLUDING

OBLIGATIONS OF LENDER UNDER THE SPECIAL DIP LOAN (THE "**RELEASED CLAIMS**"). BORROWER FURTHER COVENANTS NOT TO SUE THE RELEASED PARTIES ON ACCOUNT OF ANY RELEASED CLAIM. THIS SECTION IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES.

15.     The Debtor believes that the terms of the Loan Agreement are the most favorable it could have received, particularly since, as Section 5 of the Loan Agreement makes clear, the Debtor's estate does not bear any risk in the event there is no litigation or there is no recovery from litigation.

## **Relief Requested**

16.     Bankruptcy Code Section 364 provides, in relevant part, the following:

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503 (b)(1) of this title as an administrative expense.

(c) If the trustee is unable to obtain unsecured credit allowable under section 503 (b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

(1) with priority over any or all administrative expenses of the kind specified in section 503 (b) or 507 (b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

(d) (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

*See* 11 U.S.C. § 364.

17.     The Debtor was unable to obtain credit on a completely unsecured basis to fund the $100,000 retainer for Special Litigation Counsel.  However, as Section 5 of the Loan Agreement makes clear, the Debtor's estate does not bear any risk in the event there is no litigation or there is no recovery from litigation.

18.     The Loan Agreement requires that the Special DIP Loan be secured by (a) a first lien on the proceeds recovered through the efforts, in part or in whole, and direct or indirect, of Special Litigation Counsel (to the extent not encumbered by a valid and unavoidable pre-existing lien or security interest), (b) a first secured super-priority interest in all of Borrower's property and proceeds not subject to a pre-existing lien or security interest, (c) a super-priority administrative expense claim, and (d) an administrative expense claim, in that order.  As Section 3 of the Loan Agreement makes clear, however, the security interests and liens granted to the Lender are only with respect to litigation proceeds and property of the Debtor not already encumbered by valid, pre-existing liens or security interests.  Accordingly, there is no concern about whether or not other parties' interests are adequately protected.

19.     Based on the risk that the Lender is willing to assume, that the Special DIP Loan may not be repaid at all, the Debtor submits that the terms of the Loan Agreement are more than reasonable.  It is the Debtor's business judgment that it is in the best interests of the Debtor's estate and its creditors to investigate the potential claims that the Debtor has or may have, and further that it is in the best interests of the Debtor's estate and its creditors to obtain the Special DIP Loan to pursue such investigation.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order,

substantially in the form submitted herewith, granting the relief requested herein and granting

such other relief as the Court deems just and appropriate under the circumstances.

Dated: October 29, 2010

Respectfully submitted,

OKIN, HOLLANDER & DeLUCA, L.L.P.,
Attorneys for Martin Cadillac, L.L.C.,
Debtor and Debtor-in-Possession

By:    */s/ Gregory S. Kinoian*
            Paul S. Hollander
            Gregory S. Kinoian

## VERIFICATION

TIMOTHY F. MARTIN, of full age, certifies as follows:

I am the managing and sole member of Martin Cadillac, L.L.C. (the "Debtor"), the above-captioned debtor and debtor-in-possession. I have served as the managing member of the Debtor since its formation on or about June 3, 2003. As such, I am familiar with the Debtor's day-to-day operations, business affairs and records. I am duly authorized to make this Verification on the Debtor's behalf.

I have read the Verified Application set forth above and hereby verify and certify that the factual statements contained therein are true based upon my personal knowledge, my review of the Debtor's books and records, my review of information prepared for and provided to me at my request in connection with the Verified Application, my consultation with Debtor's counsel and my personal beliefs.

I am aware that if any of the factual statements contained in the Verified Application are willfully false, I am subject to punishment.

**I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.**

Dated: October 29, 2010

Timothy F. Martin
Managing Member of
Martin Cadillac, L.L.C.

In re Martin Cadillac, L.L.C., Debtor
Chapter 11, Case No. 10-29520 (RG)

**Exhibit A**      to Verified Application in Support of Debtor's Motion for an Order, Pursuant to
11 U.S.C. §§ 105(a) and 364(b) Fed. R. Bankr. P. 4001(c), *etc*.

# Exhibit A

# Exhibit A

## DEBTOR IN POSSESSION CREDIT AGREEMENT

**THIS DEBTOR IN POSSESSION CREDIT AGREEMENT** dated as of October 28, 2010, is entered into by and among Martin Cadillac LLC**,** a New Jersey limited liability corporation and a Chapter 11 debtor-in-possession (**"Borrower"**), and Emerald Capital Management, LLC (**"Lender"**).

## R E C I T A L S:

A.        Borrower is a debtor-in-possession under Chapter 11 of the Bankruptcy Code in case number 10-29520 (the **"Chapter 11 Case"**) pending in the United States Bankruptcy Court for the District of New Jersey (the **"Court"**).  Borrower has requested that Lender extend financing to Borrower in connection with the Chapter 11 Case in accordance with the provisions of this Agreement.

B.        Lender is willing to make loans and other extensions of credit to Borrower, subject to the terms and conditions of this Agreement.

C.        Borrower believes it may have claims against various parties arising from certain matters that occurred both before and after the commencement of its Chapter 11 Case (the **"Litigation Claims"**). Borrower further believes that such claims, if pursued, may have value to its bankruptcy estate.  Borrower further believes that it would be in the best interests of Borrower, its bankruptcy estate and its creditors to investigate what claims, if any, there are or may be, and, if claims do exist, what value such claims may have and whether, in the Borrower's business judgment, such claims should be pursued.

D.        In order to conduct such investigation, Borrower needs to borrow funds, and it is Borrower's business judgment that obtaining borrowed funds from Lender for the initial purpose of investigating potential claims is in the best interests of Borrower, its bankruptcy estate, and its creditors.

E.        Borrower wishes to retain the law firms of Storch Amini & Munves PC and Miller, Canfield, Paddock & Stone, P.L.C. as special litigation counsel (**"Special Litigation Counsel"**) to investigate and, if warranted, prosecute the Litigation Claims.

F.        Special Litigation Counsel does not represent or hold any interest adverse to Borrower or its bankruptcy estate with respect to the matters for which Special Litigation Counsel is being retained.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, the parties hereto hereby agree as follows:

<u>Section 1: The Special DIP Loan.</u>

Subject to the terms and conditions of, and in reliance upon the representations and warranties made in, this Agreement, Lender agrees to make the following post-petition loans (the **"Special DIP Loan"**) available to Borrower, in the following amounts and on the following terms and conditions:

(a) Tranche A: Lender agrees to provide $100,000 to the attorney escrow account of Storch Amini & Munves PC within five (5) business days of entry of the Court's order approving this agreement and approving the retention of Special Litigation Counsel.

(b) Tranche B: in Lender's sole discretion, Lender may choose provide up to $250,000 in additional funds following the completion of Special Counsel's investigation. Such funds will similarly be transferred to the attorney escrow account of Storch Amini & Munves PC.

<u>Section 2: Use of Proceeds.</u>

The proceeds of the Special DIP Loan shall be used by Borrower exclusively for the retention of Special Counsel, including payment of their fees and expenses approved by the Court.

<u>Section 3: Security.</u>

To the extent not encumbered by a valid and unavoidable pre-existing lien or security interest, all amounts advanced to Borrower pursuant to the Special DIP Loan will be secured by a first lien on the proceeds recovered through the efforts, in part or in whole, and direct or indirect, of Special Litigation Counsel. In addition, to secure the repayment of all amounts advanced to Borrower under the Special DIP Loan, pursuant to section 364(c) and section 364(b) of the Bankruptcy Code, Lender shall have (a) a first secured super-priority interest in all of Borrower's property and proceeds not subject to a pre-existing lien or security interest, (b) a super-priority administrative expense claim, and (c) an administrative expense claim, in that order.

<u>Section 4: Rate of Interest.</u>

Borrower agrees to pay interest in respect of all unpaid principal amounts of the Special DIP Loans from the respective dates such principal amounts are advanced until paid (whether at stated maturity, on acceleration or otherwise) at a rate per annum equal to the applicable rate indicated below:

(i)　　　for the first tranche of the Special DIP Loan, fifteen percent (15%);

2

    (ii)      for the second tranche of the Special DIP Loan, at a rate of interest to be agreed between Borrower and Lender and approved by the Court.

## Section 5: Repayment of Special DIP Loan.

The outstanding principal and interest amounts with respect to the Special DIP Loan shall be due and payable upon the recovery, if any, of monies obtained through the efforts of Special Litigation Counsel. Any repayment of principal or interest shall be applied as follows: (i) first, to pay the amount of accrued interest outstanding; (ii) second, in payment of unpaid principal.

## Section 6: Termination; Events of Default

Lender may terminate any of its obligations under this Agreement at any time, without notice to Borrower, upon (i) the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (ii) the appointment in the Chapter 11 Case of a trustee or an examiner or other responsible person with expanded powers; (iii) the dismissal of the Chapter 11 Case; or (iv) the occurrence of an event of default.

The occurrence of any of the following events, unless waived by Borrower in writing, shall constitute an event of default under this Agreement (collectively, the "**Events of Default**"):

    (a)      the failure by Borrower to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Agreement;

    (b)      the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage, or other lien which is equal or senior to any security interest, mortgage, or other lien of Lender, or (ii) entitled to priority administrative status which is equal or senior to that granted to Lender; or

    (c)      reversal, vacatur, or modification (without the express prior written consent of Borrower) of any order entered by the Court approving this Agreement.

## Section 7: Effect of Termination.

Upon termination, all of Borrower's obligations under this Agreement shall be immediately due and payable, and Lender shall have no further obligation to make any further advances under the Special DIP Loan. Upon termination, any funds remaining in the Special Litigation Counsel's escrow account shall be returned to Lender, with the exception of any unpaid fees or expenses of Special Litigation Counsel. In the event of termination, Special Counsel shall promptly make application to the Court for approval of any unpaid fees and expenses; after the Court enters an order with respect to such fees and expenses, any funds remaining in the Special Counsel's escrow account shall be returned to Lender.

All undertakings, agreements, covenants, warranties and representations of Borrower contained in the Agreement shall survive any such termination notwithstanding such termination until full repayment of Borrower's obligations. All obligations of Borrower to indemnify Lender pursuant to this Agreement shall in all events survive any termination.

3

Section 8: Representations and Warranties.

To induce Lender to enter into this Agreement and to make available the Special DIP Loan, Borrower warrants and represents to Lender that:

(a) Borrower owns the Litigation Claims and has not previously assigned, pledged, or encumbered them in any way or to any other party.

(b) Borrower is not in violation of any federal, state, or local law that would impair the ability of Borrower to pursue the Litigation Claims.

(c) Borrower will provide Lender with periodic reports on the progress of the litigation.

(d) For so long as there is any amount outstanding under the Special DIP Loan, Borrower will notify Lender before resolving any Litigation Claims.

(e) The ability of Borrower to finance the litigations requires the use of the Special DIP Loan, absent which immediate and irreparable harm will result to Borrower, its estate and creditors, as well as the possibility for a successful chapter 11 case.

(f) Borrower and its estate have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against Lender or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors and employees.

Section 9: Conditions Precedent.

Conditions Precedent to Initial Credit Extensions. Notwithstanding any other provision of this Agreement and without affecting in any manner the rights of Lender under other sections of this Agreement, Lender shall not be required to fund any Special DIP Loan requested by Borrower, unless, on or before the date of the Court order approving the Special DIP Loan, as applicable, each of the following conditions has been and continues thereafter to be satisfied:

(a) This Agreement has been executed in form and substance satisfactory to Lender by each of the signatories thereto and accepted by Lender, and Borrower shall be in compliance with all of the terms thereof, and all representations and warranties contained therein shall be true and correct in all material respects.

(b) No Event of Default shall exist at the time of, and would not result from the funding of, any requested Special DIP Loan.

Limited Waiver of Conditions Precedent. If Lender shall make any Special DIP Loan or otherwise extend any credit to Borrower under this Agreement at a time when any of the foregoing conditions precedent are not satisfied (regardless of whether the failure of satisfaction of any of such conditions precedent is known or unknown to Lender), the funding of the Special

4

DIP Loan shall not operate as a waiver of the right of Lender to insist upon the satisfaction of all conditions precedent with respect to each subsequent borrowing requested by Borrower or a waiver of any Event of Default as a consequence of the failure of any such conditions to be satisfied.

Section 10:  Miscellaneous.

General Indemnity.  Borrower hereby agrees to indemnify and defend Lender and to hold Lender harmless from and against any Claim ever suffered or incurred by Borrower arising out of or related to this Agreement, the performance by Lender of its duties or the exercise of any of its rights or remedies hereunder, or the result of Borrower's failure to observe, perform or discharge any of such Borrower's duties hereunder. Borrower shall also indemnify and defend Lender against and save Lender harmless from all claims of any person arising out of, related to, or with respect to any transactions entered into pursuant to this Agreement.

Survival of All Indemnities.  Notwithstanding anything to the contrary in this Agreement, the obligation of Borrower and Lender with respect to each indemnity given by it in this Agreement shall survive the full repayment of the obligations and the termination of any of the Special DIP Loan.

Indulgences Not Waivers.  Lender's failure at any time or times hereafter to require strict performance by Borrower of any provision of this Agreement shall not waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith.

Orders of Court Sufficient.  The order(s) entered by the Court approving the Special DIP Loan shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Special DIP Loan without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the Special DIP Loan, or to entitle Lender to the priorities granted herein. Notwithstanding the foregoing, Lender is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Special DIP Loan, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the date of the order(s) approving the Special DIP Loan. Borrower shall execute and deliver promptly upon demand all such financing statements, mortgages, notices and other documents as Lender may reasonably request.

Modification of Agreement.  This Agreement may not be modified, altered or amended, except by an agreement in writing signed by Borrower and Lender and approved by the Court.

Severability.  Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Conflict of Terms. In the event that any provision in this Agreement is in direct conflict with, or inconsistent with, any provisions of the orders entered by the Court approving the Special DIP Loan, the provisions of such orders shall govern and control.

Execution in Counterparts. This Agreement and any amendments hereto may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.

Lender's Consent. Whenever Lender's consent is required to be obtained under this Agreement as a condition to any action, inaction, condition or event, Lender shall be authorized to give or withhold its consent in its sole and absolute discretion, unless expressly stated otherwise.

Time of Essence. Time is of the essence of this Agreement.

Entire Agreement: This Agreement embodies the entire understanding and agreement between the parties hereto and thereto with respect to the subject matter hereof and thereof and supersedes all prior agreements, understandings and inducements, whether express or implied, oral or written.

Interpretation. No provision of this Agreement shall be construed against or interpreted to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of such party having, or being deemed to have, structured, drafted or dictated such provision.

Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey.

Release. BORROWER, IN ITS OWN RIGHT AND ON BEHALF OF ITS ESTATE, REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE **"RELEASING PARTIES"**), HEREBY JOINTLY AND SEVERALLY RELEASE, ACQUIT, AND FOREVER DISCHARGE LENDER AND ITS REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE **"RELEASED PARTIES"**) FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES, WHETHER DIRECTLY, INDIRECTLY OR DERIVATIVELY, WHETHER OR NOT IN

CONNECTION WITH OR RELATED TO THE SPECIAL DIP LOAN OR ANY MATTER OR
DOCUMENT RELATED HERETO, AT LAW OR IN EQUITY, BY STATUTE OR
COMMON LAW, IN CONTRACT, IN TORT, WHETHER THE LAW OF THE UNITD
STATES OR ANY OTHER COUNTRY, UNION, ORGANIZATION OF FOREIGN
COUNTRIES OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR
UNSUSPECTED, BUT EXCLUDING OBLIGATIONS OF LENDER UNDER THE SPECIAL
DIP LOAN (THE **RELEASED CLAIMS**"). BORROWER FURTHER COVENANTS NOT
TO SUE THE RELEASED PARTIES ON ACCOUNT OF ANY RELEASED CLAIM. THIS
SECTION IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER
RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN
FAVOR OF THE RELEASED PARTIES.

        IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year
specified at the beginning of this Agreement.

                            BORROWER:

                            **MARTIN CADILLAC LLC,** a New Jersey
                            limited liability corporation

                            By:     _____
                                    Timothy Martin


                            LENDER:

                            **EMERALD CAPITAL MANAGEMENT LLC**, a
                            Delaware limited liability corporation


                            By:     _____
                                    Alan Cohen

7