| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>**OKIN, HOLLANDER & DeLUCA, L.L.P.**<br>One Parker Plaza, 12th Floor<br>400 Kelby Street<br>Fort Lee, NJ 07024<br>Tel:   (201) 947-7500<br>Fax:   (201) 947-2663<br>Paul S. Hollander (PH-2681)<br>Gregory S. Kinoian (GK-7386)<br><br>Attorneys for Martin Cadillac, LLC<br>Debtor and Debtor-in-Possession | **FILED**<br>**JAMES J. WALDRON**<br><br>DEC 1 3 2010<br><br>U.S. BANKRUPTCY COURT<br>NEWARK, N.J.<br>BY _____ DEPUTY |
| In re<br><br>**MARTIN CADILLAC, L.L.C.,**<br><br>Debtor and Debtor-in-Possession. | Chapter 11<br><br>Case Nos.   10-29520 (RG)<br><br>Honorable Rosemary Gambardella |

**ORDER, PURSUANT TO 11 U.S.C. §§ 105(a) AND 364(b) AND FED. R. BANKR. P. 4001(c) (A) AUTHORIZING THE DEBTOR-IN-POSSESSION TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (B) GRANTING LIENS, SECURITY INTERESTS AND SUPER-PRIORITY CLAIMS IN CONNECTION THEREWITH, AND (C) GRANTING CERTAIN OTHER RELIEF RELATING THERETO**

The relief set forth on the following pages numbered two (2) through thirteen (13) is

hereby **ORDERED.**

_____
Rosemary Gambardella
U.S.B.J.

12-13-10

THIS matter is before this Court in connection with the motion of Martin Cadillac, L.L.C., the above-captioned debtor and debtor-in-possession ("Debtor") for the entry of an Order pursuant to 11 U.S.C. §§ 105(a) and 364(b) and Fed. R. Bankr. P. 4001(c), (A) authorizing the Debtor to obtain post-petition financing pursuant to Bankruptcy Code Section 364, (B) granting liens, security interests and super-priority claims in connection therewith, and (C) granting certain other relief relating thereto (Docket No. 187) (the "Section 364 Motion") in accordance with the terms of that certain Debtor-in-Possession Credit Agreement attached hereto as Exhibit A (the "Loan Agreement") between the Debtor and Emerald Capital Management LLC, a Delaware LLC with its principal office located in Closter, New Jersey (the "Lender"). Having reviewed the Verified Application submitted in support of the Section 364 Motion (the "Verified Application") and the Loan Agreement and the objections filed with respect thereto, and having reviewed the record of this Chapter 111 case, and upon the proceedings held before this Court with respect to the Section 364 Motion, the Court is satisfied that good and sufficient cause appears and

THE COURT HEREBY FINDS:

A.      The Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code (11 U.S.C. § 101, et seq. (the "Bankruptcy Code")) on June 25, 2010 (the "Petition Date"). The Debtor is operating its business as a debtor-in-possession in accordance with Sections 1107(a) and 1108 of the Bankruptcy Code. No Chapter 11 Trustee has been appointed and no Committee of Unsecured Creditors has been organized.

B.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

Case 10-29520-RG    Doc 251    Filed 12/13/10    Entered 12/14/10 12:21:17    Desc Main
Case 10-29520-RG    Doc 241 Document 12/06/age 3 of 21 12/06/10 20:38:52    Desc
Exhibit C (revised Proposed Order)    Page 3 of 21

C.      The predicates for the relief sought in the Section 364 Motion are §§ 105 and 364

of the Bankruptcy Code and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy

Procedure.

D.      The Debtor is the owner and operator of a Cadillac car dealership (the

"Dealership") located at 374 Route 9W (Sylvan Avenue), Englewood Cliffs, New Jersey 07632

(the "Premises"). The Debtor owns and operates the Dealership pursuant to the Dealer

Agreement (the Dealer Agreement was originally with General Motors Corporation ("Old

GM")). The Debtor occupies the Premises pursuant to a Master Lease dated June 6, 2003 with

Nacht Cadillac Inc., as landlord (the "Lease"). Upon information and belief, Argonaut Holdings,

Inc. ("AHI") is an assignee and/or successor-in-interest of Nacht Cadillac, Inc. under the Lease

and is the current owner in fee of the Premises. Upon information and belief, AHI is affiliated

with GM.

E.      The Debtor ceased operations on or about October 20, 2010.

F.      The Debtor believes it may have claims against various parties arising from

certain matters that occurred both before and after the commencement of its Chapter 11 case.

The Debtor further believes that such claims, if pursued, may have value to its bankruptcy

estate. The Debtor further believes that it would be in the best interests of the Debtor, its

bankruptcy estate and its creditors to investigate what claims, if any, there are or may be, and, if

claims do exist, what value such claims may have and whether, in the Debtor's business

judgment, such claims should be pursued.

G.      On October 12, 2010, an application to approve the retention of law firms of

Storch Amini & Munves PC ("SAM") and Miller, Canfield, Paddock & Stone, P.L.C.

("MCP&S") (collectively, "Special Litigation Counsel") as special litigation counsel was filed

on behalf of the Debtor (Docket No. 155) (the "Retention Application"). Special Litigation Counsel is being sought to be retained to, initially, conduct the investigation into the potential claims that the Debtor has or may have. Special Litigation Counsel requires a $100,000 advance retainer to conduct the investigation. Objections to the Retention Application were filed by the United States Trustee ("U.S. Trustee") and General Motors LLC ("GM") (respectively, Docket Nos. 164 and 165), who raised, among other things, issues concerning the source of the $100,000 retainer to be paid to Special Litigation Counsel.

H.    At the time that the Retention Application was filed, there was an expectation that the $100,000 retainer would be funded by the Debtor's principal, Mr. Timothy Martin, through personal borrowing. However, as discussed at the status conference held on October 26, 2010, the $100,000 retainer will now be funded by Lender making a debtor-in-possession loan to the Debtor. The Lender has agreed to provide $100,000 in initial financing directly to the attorney escrow account of SAM (the "Special DIP Loan"). The terms of the financing are set forth in the Loan Agreement.

I.    Substantially contemporaneous with the filing of the Section 364 Motion, Special Litigation Counsel filed a supplement to the Retention Application (Docket No. 185)[1] (the "Retention Application Supplement"), which included, as Exhibit B thereto, a modified retention agreement dated October 29, 2010 (the "Modified Engagement Letter"), which revised the provision concerning the funding of the $100,000 retainer. As set forth in the Modified Engagement Letter, the Debtor's engagement of Special Litigation Counsel is not only subject to the Court approving the Retention Application, as supplemented, but also approving the Loan Agreement on terms that are satisfactory to the Lender.

---

[1] The Exhibits to the Retention Application Supplement were filed as Docket No. 186.

J.      In order to conduct the investigation into the potential claims that the Debtor has

or may have, the Debtor needs to borrow funds, and it is the Debtor's business judgment that

obtaining the Tranche A (as referred to in Section 1 of the Loan Agreement) portion of the

Special DIP Loan, on the terms set forth in the Loan Agreement, for the initial purpose of

funding an investigation of potential claims is in the best interests of the Borrower, its

bankruptcy estate and its creditors. Furthermore, should a decision be made after the initial

investigation that there are claims of the Debtor that are worth pursuing, the Lender has

expressed a willingness, at its discretion, to advance up to an additional $250,000 toward

litigation costs (referred to in Section 1 of the Loan Agreement as Tranche B); *provided*,

*however*, any agreement of the Lender to make any further advance above the Tranche A portion

of the Special DIP Loan must be subject to further order of the Court after notice to interested

parties.

K.      The Debtor does not have funds available to pay the $100,000 retainer to Special

Litigation Counsel. The Debtor believes that the investigation may reveal that the Debtor has

claims that have real value and that would benefit the Debtor's estate and its creditors. The

Debtor was unable to obtain credit on a completely unsecured basis to fund the $100,000 retainer

for Special Litigation Counsel. Without the Special DIP Loan, the Debtor will surely lose what

might prove to be a valuable asset to the Debtor's estate. Furthermore, the terms of the Loan

Agreement make clear that the Debtor's estate does not bear any risk in the event there is no

litigation or there is no recovery from litigation. The Debtor believes that the terms of the Loan

Agreement are the most favorable it could have received.

L.      The following objections to the Section 364 Motion were filed (collectively, the

"Objections"): (i) that portion of the letter Response filed on November 3, 2010 by Farrell

Family Ventures, LLC ("Farrell Family") and Farrell's Leasing Company, Inc. ("Farrell

Leasing") (collectively, "Farrell") concerning the Section 364 Motion (as such term is defined

herein) (Docket No. 191) (the "Farrell Section 364 Motion Objection"); (ii) the Objection of Ally

Financial, Inc. (referred to in this case and herein as "GMAC") to the Section 364 Motion filed

on November 3, 2010 (Docket No. 196) (the "GMAC Section 364 Motion Objection"); (iii) that

portion of the Supplemental Limited Objection of General Motors LLC ("GM") and Argonaut

Holdings, Inc. ("AHI") to the Section 364 Motion filed on November 3, 2010 (Docket No. 200)

(the "GM/AHI Section 364 Motion Objection"); and (iv) that portion of the letter Objection filed

on November 3, 2010 by the United States Trustee (the "U.S. Trustee") to the Section 364

Motion (Docket No. 201) (the "U.S. Trustee Section 364 Motion Objection").

  M. Notice of the hearing to consider the Section 364 Motion was provided to:  GM;

GMAC; Farrell; Mariner's Bank; Valley National Bank; the U.S. Trustee; and parties in this case

who receive electronic notices of filing pursuant to the CM/ECF system.  Such notice constitutes

sufficient notice under Fed. R. Bankr. P. 4001 and no other notice need be given.

  N. A hearing was held on November 30, 2010 regarding the Section 364 Motion and

the Retention Application (as modified by the Retention Application Supplement).  Appearances

on behalf of the Debtor, GM, GMAC, Farrell, the U.S. Trustee and the proposed Special

Litigation Counsel were noted on the record of the November 30, 2010 hearing.

  O. At the November 30, 2010 hearing, Farrell agreed on the record to withdraw the

Farrell Section 364 Motion Objection and to consent to the Tranche A portion of the Special DIP

Loan in the amount of $100,000 (plus interest thereon) being secured by a first-priority lien on

causes of action of the Debtor commenced by Special Litigation Counsel and on the proceeds

recovered through the efforts, in part or in whole, and direct or indirect, of Special Litigation

Counsel, with Farrell reserving all rights, claims, defenses and objections with respect to whether

any further advances under the Special DIP Loan above and beyond the initial $100,000 (plus

interest thereon), including, but not limited to, the possible $250,000 in additional funding

identified in the Loan Agreement as Tranche B, should be secured by a first-priority lien on

causes of action of the Debtor commenced by Special Litigation Counsel and on the proceeds

recovered through the efforts, in part or in whole, and direct or indirect, of Special Litigation

Counsel, and whether Farrell has a valid first-priority lien in commercial tort claims of the

Debtor and the proceeds thereof.  The Debtor has reserved all rights, claims, counter-claims,

defenses and objections with respect to any objections that may be raised by Farrell with respect

to whether any further advances under the Special DIP Loan above and beyond the initial

$100,000 (plus interest thereon), including, but not limited to, the possible $250,000 in additional

funding identified in the Loan Agreement as Tranche B, should be secured by a first-priority lien

on causes of action of the Debtor commenced by Special Litigation Counsel and on the proceeds

recovered through the efforts, in part or in whole, and direct or indirect, of Special Litigation

Counsel, and whether Farrell has a valid first-priority lien in commercial tort claims of the

Debtor and the proceeds thereof.

      P.     At the conclusion of the November 30, 2010 hearing, the Court instructed (i) the

Debtor to supplement the record with a revised Loan Agreement that limited the scope of the

indemnification and release provisions contained therein and modified the termination provision

to require notice to the Debtor, and (ii) proposed Special Litigation Counsel to further

supplement the record with revised affidavits on behalf of SAM and MCP&S disclosing the

relationships of SAM and MCP&S with Mr. Alan Cohen, the principal of the Lender, and any

entities in which Mr. Cohen has or had an interest, and more clearly defining the scope of the

Special Litigation Counsel's retention. On December 6, 2010, the Debtor filed a revised Loan

Agreement[2] and, as a result thereof, a revised form of this Order, and proposed Special Litigation

Counsel filed (Docket No. 238) their supplemental affidavits and a revised form of order.

Q.    Having reviewed the supplemental filings in further support of the Section 364

Motion and the Retention Application, for the reasons set forth by the Court on the record of the

November 30, 2010 hearing, which are incorporated herein by reference, good cause has been

shown for the entry of this Order. Among other things, approval of the Tranche A portion of the

Special DIP Loan at this time affords the Debtor's estate the opportunity to investigate potential

claims it has or may have without bearing any risk in the event there is no litigation or there is no

recovery from litigation. The Tranche A portion of the Special DIP Loan is necessary to

preserve what might prove to be a valuable asset to the Debtor's estate. The terms of the Loan

Agreement are reasonable.

R.    This Court concludes that entry of this Order is in the best interest of the Debtor,

its estate and creditors.

**THEREFORE, AS OF THE DATE SET FORTH HEREINABOVE, IT IS
HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Section 364 Motion is hereby granted, and the Objections are hereby

overruled.

2.    The Debtor is hereby authorized to: (i) execute and deliver the Loan

Agreement in substantially the form annexed hereto as Exhibit A, as well as any and all other

documents referred to therein or requested by the Lender to give effect to the terms thereof;

(ii) obtain the Tranche A (as referred to in Section 1 of the Loan Agreement) portion of the

---

[2] Exhibit A hereto is the revised Loan Agreement; references herein to the Loan Agreement is as revised.

Special DIP Loan from the Lender for the purpose of paying the advance retainer to Special

Litigation Counsel; and (iii) pay and perform all obligations and agreements, and satisfy all

conditions, in accordance with the terms of the Loan Agreement

        3.      The Tranche A portion of the Special DIP Loan made by the Lender to the

Debtor under the Loan Agreement, together with all interest thereon, (collectively, the

"Post-Petition Debt"), shall be, and hereby is, secured (the "DIP Liens") by:  (i) a valid, binding

and enforceable senior first lien on and security interest in all proceeds recovered through the

efforts, in part or in whole, and direct or indirect, of Special Litigation Counsel, to extent such

proceeds are not already subject to and encumbered by valid pre-existing liens or security

interests (ii) a valid, binding and enforceable senior first lien on and security interest in all

property of the Debtor's estate not already subject to and encumbered by valid pre-existing liens

or security interests (collectively, the "Post-Petition Security").

        4.      The Tranche A portion of the Special DIP Loan shall have administrative

expense priority in accordance with the provisions of § 364(c)(1) of the Bankruptcy Code over all

other administrative expenses in these Chapter 11 cases of the kind specified in, or ordered

pursuant to, §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy

Code.  The Tranche A portion of the Special DIP Loan also shall have allowable as an

administrative expense in accordance with the provisions of § 364(b) of the Bankruptcy Code.

        5.      The Debtor is authorized to use the proceeds of the Tranche A portion of

the Special DIP Loan solely for the purpose authorized by the Loan Agreement.

        6.      The Lender shall not be required to file any UCC-1 financing statements,

or any other document, or take any other action in order to validate or perfect the liens granted to

the Lender hereunder or under the Loan Agreement, as all such liens shall be deemed

automatically perfected by and upon entry of this Order. If the Lender shall, in its discretion,

require such UCC-1 financing statements, the Debtor is hereby authorized to and shall

concurrently herewith or hereafter, as requested by the Lender, execute and deliver to the Lender

all such documents as the Lender may request to effectuate, evidence, confirm, validate or perfect

the liens provided for herein or granted pursuant to the Loan Agreement. If the Lender shall, in

its discretion, choose to file such UCC-1 financing statements, and otherwise confirm perfection

of such liens, all such financing statements or similar instruments shall be deemed to have been

filed or recorded at the time and on the date of entry of this Order. The Lender may, in its

discretion, file a certified copy of this Order in any filing or recording office in any jurisdiction in

which the Debtor is incorporated, has or maintains any of the property subject to the Post-Petition

Security or office.

      7.     The Debtor and the Lender are hereby authorized to implement, after the

entry of this Order, in accordance with the terms of the Loan Agreement, any amendments to and

modifications of the Loan Agreement without further order of the Court on the following

conditions: (i) the amendment or modification does not constitute a material change to the terms

of the Loan Agreement (and, for purposes hereof, a "material change" shall mean a change that

operates to increase the rate of interest other than as currently provided in the Loan Agreement,

add specific events of default, increase the aggregate amount of the commitments or enlarge the

nature and extent of default remedies available to the Lender following an event of default); and

(ii) copies of the amendment or modification must be filed with the Court with a notice stating

that the amendment or modification does not constitute a material change and served upon the

U.S. Trustee. Any amendment or modification that constitutes a material change, to be effective,

must be approved by the Court. The Debtor may not obtain the Tranche B (as referred to in

Section 1 of the Loan Agreement) portion of the Special DIP Loan from the Lender without further order of this Court, the application for which must be on notice to all interested parties.

8.    Nothing herein shall be deemed to be a waiver by the Lender of its right to request additional or further protection of its interests in any property of the Debtor or to request any other relief.  Nothing herein shall be deemed to be a waiver by the Debtor of its rights to object to any of the foregoing relief if requested by the Lender.

9.    The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby lifted and terminated as to the Lender to the extent necessary to implement the provisions of this Order and the Loan Agreement, thereby permitting the Lender to receive the proceeds for repayment of the Tranche A portion of the Special DIP Loan in accordance with the Loan Agreement, to file or record any UCC-1 financing statements and other documents evidencing the perfection of the Post-Petition Security.

10.    The advance of the Tranche A portion of the Special DIP Loan in accordance with the Loan Agreement is made in reliance on this Order, and the Debtor shall not seek at any time any order which: (a) authorizes the use of cash collateral of Debtor in which the Lender has an interest, or the sale, lease, or other disposition of property of the Debtor's estate in which the Lender has a lien; or (b) authorizes the obtaining of credit or the incurring of indebtedness under Section 364 of the Bankruptcy Code secured by a lien which is equal or senior to a lien in property in which the Lender holds a lien, or which is entitled to priority administrative claim status which is equal or superior to that granted to the Lender herein; unless, in each instance:  (i) the Lender shall have given, in its sole and absolute discretion, its express prior written consent thereto, with no such consent being implied from any other action, inaction or acquiescence by the Lender; or (ii) such other order requires that the Tranche A portion of the

Special DIP Loan, and all interest thereon, without limitation, shall first be indefeasibly paid in full.

11.    To the extent the terms and conditions of the Loan Agreement are in conflict with the terms and conditions of this Order, both shall be read to give the fullest meaning to each.

12.    The provisions of this Order shall be effective immediately upon entry of this Order by the Court and shall survive entry of, and shall govern with respect to any conflict with any Order which may be entered confirming any plan of reorganization, dismissing the Chapter 11 case, or converting the Chapter 11 case from Chapter 11 to Chapter 7.

13.    The Lender shall be entitled to the full protection of the provisions of Section 364(e) of the Bankruptcy Code with respect to debts and the obligations and liens and security interests created or authorized by this Order in the event that this Order or any other authority contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction.

14.    Unless the Lender expressly consents, no plan of reorganization in this case shall impair or otherwise modify the rights of the Lender under this Order or the Loan Agreement.

15.    Any credit extended and loans made to the Debtor pursuant to this Order shall be deemed to be extended in good faith as that term is used in Section 364(e) of the Bankruptcy Code.

16.    In making decisions to make a loan or loans to the Debtor under this Order or the Loan Agreement or to collect the indebtedness and obligations of the Debtor, the Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a

"responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar term, are used in the United States Comprehensive, Environmental Response, Compensation and Liability Act ("CERCLA"), as amended, or any similar Federal or state statute). Notwithstanding the foregoing, nothing herein shall serve to limit the Lender 's liability, if any, under CERCLA, or any state or Federal statute, to the extent the Lender: (1) participates in the management or operational affairs of a vessel or facility owned or operated by the Debtor, within the meaning of 42 U.S.C. Section 9601(20)(F); or (2) otherwise causes lender liability to arise, or the status of "control," "responsible person," "owner," or "operator," to exist under applicable law.

17.    The requirement under Rule 9013-2 of the Local Rules for the Bankruptcy Court for the District of New Jersey for the filing of a brief is waived.

18.    The manner and form of notice of the Section 364 Motion is approved and constitutes good and sufficient notice of the Section 364 Motion, and any requirements for other notice are hereby waived and dispensed with.

# Exhibit "A"




# Exhibit "A"

## DEBTOR IN POSSESSION CREDIT AGREEMENT

**THIS DEBTOR IN POSSESSION CREDIT AGREEMENT** dated as of October 28, 2010, is entered into by and among Martin Cadillac LLC, a New Jersey limited liability corporation and a Chapter 11 debtor-in-possession (**"Borrower"**), and Emerald Capital Management, LLC ("**Lender**").

## R E C I T A L S:

A.    Borrower is a debtor-in-possession under Chapter 11 of the Bankruptcy Code in case number 10-29520 (the **"Chapter 11 Case"**) pending in the United States Bankruptcy Court for the District of New Jersey (the **"Court"**). Borrower has requested that Lender extend financing to Borrower in connection with the Chapter 11 Case in accordance with the provisions of this Agreement.

B.    Lender is willing to make loans and other extensions of credit to Borrower, subject to the terms and conditions of this Agreement.

C.    Borrower believes it may have claims against various parties arising from certain matters that occurred both before and after the commencement of its Chapter 11 Case (the **"Litigation Claims"**). Borrower further believes that such claims, if pursued, may have value to its bankruptcy estate. Borrower further believes that it would be in the best interests of Borrower, its bankruptcy estate and its creditors to investigate what claims, if any, there are or may be, and, if claims do exist, what value such claims may have and whether, in the Borrower's business judgment, such claims should be pursued.

D.    In order to conduct such investigation, Borrower needs to borrow funds, and it is Borrower's business judgment that obtaining borrowed funds from Lender for the initial purpose of investigating potential claims is in the best interests of Borrower, its bankruptcy estate, and its creditors.

E.    Borrower wishes to retain the law firms of Storch Amini & Munves PC and Miller, Canfield, Paddock & Stone, P.L.C. as special litigation counsel (**"Special Litigation Counsel"**) to investigate and, if warranted, prosecute the Litigation Claims.

F.    Special Litigation Counsel does not represent or hold any interest adverse to Borrower or its bankruptcy estate with respect to the matters for which Special Litigation Counsel is being retained.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, the parties hereto hereby agree as follows:

Section 1: The Special DIP Loan.

Subject to the terms and conditions of, and in reliance upon the representations and warranties made in, this Agreement, Lender agrees to make the following post-petition loans (the **"Special DIP Loan"**) available to Borrower, in the following amounts and on the following terms and conditions:

(a) Tranche A: Lender agrees to provide $100,000 to the attorney escrow account of Storch Amini & Munves PC within five (5) business days of entry of the Court's order approving this agreement and approving the retention of Special Litigation Counsel.

(b) Tranche B: in Lender's sole discretion, Lender may choose provide up to $250,000 in additional funds following the completion of Special Counsel's investigation. Such funds will similarly be transferred to the attorney escrow account of Storch Amini & Munves PC.

Section 2: Use of Proceeds.

The proceeds of the Special DIP Loan shall be used by Borrower exclusively for the retention of Special Counsel, including payment of their fees and expenses approved by the Court.

Section 3: Security.

To the extent not encumbered by a valid and unavoidable pre-existing lien or security interest, all amounts advanced to Borrower pursuant to the Special DIP Loan will be secured by a first lien on the proceeds recovered through the efforts, in part or in whole, and direct or indirect, of Special Litigation Counsel. In addition, to secure the repayment of all amounts advanced to Borrower under the Special DIP Loan, pursuant to section 364(c) and section 364(b) of the Bankruptcy Code, Lender shall have (a) a first secured super-priority interest in all of Borrower's property and proceeds not subject to a pre-existing lien or security interest, (b) a super-priority administrative expense claim, and (c) an administrative expense claim, in that order.

Section 4: Rate of Interest.

Borrower agrees to pay interest in respect of all unpaid principal amounts of the Special DIP Loans from the respective dates such principal amounts are advanced until paid (whether at stated maturity, on acceleration or otherwise) at a rate per annum equal to the applicable rate indicated below:

(i)     for the first tranche of the Special DIP Loan, fifteen percent (15%);

2

       (ii)      for the second tranche of the Special DIP Loan, at a rate of interest to be agreed between Borrower and Lender and approved by the Court.

### Section 5: Repayment of Special DIP Loan.

The outstanding principal and interest amounts with respect to the Special DIP Loan shall be due and payable upon the recovery, if any, of monies obtained through the efforts of Special Litigation Counsel. Any repayment of principal or interest shall be applied as follows: (i) first, to pay the amount of accrued interest outstanding; (ii) second, in payment of unpaid principal.

### Section 6: Termination; Events of Default

Lender may terminate any of its obligations under this Agreement at any time, upon written notice to Borrower, upon (i) the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (ii) the appointment in the Chapter 11 Case of a trustee or an examiner or other responsible person with expanded powers; (iii) the dismissal of the Chapter 11 Case; or (iv) the occurrence of an event of default.

The occurrence of any of the following events, unless waived by Borrower in writing, shall constitute an event of default under this Agreement (collectively, the "**Events of Default**"):

       (a)      the failure by Borrower to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Agreement;

       (b)      the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage, or other lien which is equal or senior to any security interest, mortgage, or other lien of Lender, or (ii) entitled to priority administrative status which is equal or senior to that granted to Lender; or

       (c)      reversal, vacatur, or modification (without the express prior written consent of Borrower) of any order entered by the Court approving this Agreement.

### Section 7: Effect of Termination.

Upon termination, all of Borrower's obligations under this Agreement shall be immediately due and payable, and Lender shall have no further obligation to make any further advances under the Special DIP Loan. Upon termination, any funds remaining in the Special Litigation Counsel's escrow account shall be returned to Lender, with the exception of any unpaid fees or expenses of Special Litigation Counsel. In the event of termination, Special Counsel shall promptly make application to the Court for approval of any unpaid fees and expenses; after the Court enters an order with respect to such fees and expenses, any funds remaining in the Special Counsel's escrow account shall be returned to Lender.

All undertakings, agreements, covenants, warranties and representations of Borrower contained in the Agreement shall survive any such termination notwithstanding such termination until full repayment of Borrower's obligations. All obligations of Borrower to indemnify Lender pursuant to this Agreement shall in all events survive any termination.

Section 8: Representations and Warranties.

To induce Lender to enter into this Agreement and to make available the Special DIP Loan, Borrower warrants and represents to Lender that:

(a) Borrower owns the Litigation Claims and has not previously assigned, pledged, or encumbered them in any way or to any other party.

(b) Borrower is not in violation of any federal, state, or local law that would impair the ability of Borrower to pursue the Litigation Claims.

(c) Borrower will provide Lender with periodic reports on the progress of the litigation.

(d) For so long as there is any amount outstanding under the Special DIP Loan, Borrower will notify Lender before resolving any Litigation Claims.

(e) The ability of Borrower to finance the litigations requires the use of the Special DIP Loan, absent which immediate and irreparable harm will result to Borrower, its estate and creditors, as well as the possibility for a successful chapter 11 case.

(f) Borrower and its estate have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against Lender or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors and employees.

Section 9: Conditions Precedent.

Conditions Precedent to Initial Credit Extensions. Notwithstanding any other provision of this Agreement and without affecting in any manner the rights of Lender under other sections of this Agreement, Lender shall not be required to fund any Special DIP Loan requested by Borrower, unless, on or before the date of the Court order approving the Special DIP Loan, as applicable, each of the following conditions has been and continues thereafter to be satisfied:

(a)     This Agreement has been executed in form and substance satisfactory to Lender by each of the signatories thereto and accepted by Lender, and Borrower shall be in compliance with all of the terms thereof, and all representations and warranties contained therein shall be true and correct in all material respects.

(b)     No Event of Default shall exist at the time of, and would not result from the funding of, any requested Special DIP Loan.

Limited Waiver of Conditions Precedent. If Lender shall make any Special DIP Loan or otherwise extend any credit to Borrower under this Agreement at a time when any of the foregoing conditions precedent are not satisfied (regardless of whether the failure of satisfaction of any of such conditions precedent is known or unknown to Lender), the funding of the Special

4

DIP Loan shall not operate as a waiver of the right of Lender to insist upon the satisfaction of all conditions precedent with respect to each subsequent borrowing requested by Borrower or a waiver of any Event of Default as a consequence of the failure of any such conditions to be satisfied.

    Section 10: Miscellaneous.

    General Indemnity.  Borrower hereby agrees to indemnify and defend Lender and to hold Lender harmless from and against any Claim ever suffered or incurred by Borrower arising out of or related to this Agreement, the performance by Lender of its duties or the exercise of any of its rights or remedies hereunder, or the result of Borrower's failure to observe, perform or discharge any of such Borrower's duties hereunder. Borrower shall also indemnify and defend Lender against and save Lender harmless from all claims of any person arising out of, related to, or with respect to any transactions entered into pursuant to this Agreement; provided however, that this indemnification shall not apply to Claims arising out of Lender's willful misconduct or gross negligence.

    Survival of All Indemnities.  Notwithstanding anything to the contrary in this Agreement, the obligation of Borrower and Lender with respect to each indemnity given by it in this Agreement shall survive the full repayment of the obligations and the termination of any of the Special DIP Loan.

    Indulgences Not Waivers.  Lender's failure at any time or times hereafter to require strict performance by Borrower of any provision of this Agreement shall not waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith.

    Orders of Court Sufficient.  The order(s) entered by the Court approving the Special DIP Loan shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Special DIP Loan without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the Special DIP Loan, or to entitle Lender to the priorities granted herein. Notwithstanding the foregoing, Lender is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Special DIP Loan, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the date of the order(s) approving the Special DIP Loan. Borrower shall execute and deliver promptly upon demand all such financing statements, mortgages, notices and other documents as Lender may reasonably request.

    Modification of Agreement.  This Agreement may not be modified, altered or amended, except by an agreement in writing signed by Borrower and Lender and approved by the Court.

    Severability.  Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be

5

ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Conflict of Terms. In the event that any provision in this Agreement is in direct conflict with, or inconsistent with, any provisions of the orders entered by the Court approving the Special DIP Loan, the provisions of such orders shall govern and control.

Execution in Counterparts. This Agreement and any amendments hereto may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.

Lender's Consent. Whenever Lender's consent is required to be obtained under this Agreement as a condition to any action, inaction, condition or event, Lender shall be authorized to give or withhold its consent in its sole and absolute discretion, unless expressly stated otherwise.

Time of Essence. Time is of the essence of this Agreement.

Entire Agreement: This Agreement embodies the entire understanding and agreement between the parties hereto and thereto with respect to the subject matter hereof and thereof and supersedes all prior agreements, understandings and inducements, whether express or implied, oral or written.

Interpretation. No provision of this Agreement shall be construed against or interpreted to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of such party having, or being deemed to have, structured, drafted or dictated such provision.

Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey.

Release. BORROWER, IN ITS OWN RIGHT AND ON BEHALF OF ITS ESTATE, REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE **"RELEASING PARTIES"**), HEREBY JOINTLY AND SEVERALLY RELEASE, ACQUIT, AND FOREVER DISCHARGE LENDER AND ITS REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE **"RELEASED PARTIES"**) FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING

PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES,
WHETHER DIRECTLY, INDIRECTLY OR DERIVATIVELY, IN CONNECTION WITH OR
RELATED TO THE SPECIAL DIP LOAN OR ANY MATTER OR DOCUMENT RELATED
THERETO, AT LAW OR IN EQUITY, BY STATUTE OR COMMON LAW, IN CONTRACT,
IN TORT, WHETHER THE LAW OF THE UNITED STATES OR ANY OTHER COUNTRY,
UNION, ORGANIZATION OF FOREIGN COUNTRIES OR OTHERWISE, KNOWN OR
UNKNOWN, SUSPECTED OR UNSUSPECTED, BUT EXCLUDING OBLIGATIONS OF
LENDER WITH RESPECT TO THE SPECIAL DIP LOAN UNDER THIS AGREEMENT
(THE "**RELEASED CLAIMS**"). BORROWER FURTHER COVENANTS NOT TO SUE
THE RELEASED PARTIES ON ACCOUNT OF ANY RELEASED CLAIM. THIS SECTION
IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE,
COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF
THE RELEASED PARTIES.

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year
specified at the beginning of this Agreement.

BORROWER:

**MARTIN CADILLAC LLC,** a New Jersey
limited liability corporation

By:  _____
Timothy Martin

LENDER:

**EMERALD CAPITAL MANAGEMENT LLC**, a
Delaware limited liability corporation

By:  _____
Alan Cohen

7